**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Marilyn Kelly    Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED MARCH 30, 2010

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                      No. 138123

RONALD JAMES PLUNKETT,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

YOUNG, J.

This case requires this Court to determine whether a defendant who transported another person to make a drug purchase, supplied the money for this purchase, and intended that the drug purchase occur may be bound over for trial for violating laws prohibiting the delivery of heroin and the delivery of heroin causing death. We hold that evidence of such conduct provides probable cause to believe that defendant aided and abetted the violation of these laws and, therefore, that he may be bound over for trial on those counts. Under MCR 7.302(H)(1), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals, reinstate the district court's bindover for trial on these counts, and remand this case to the Washtenaw Circuit Court for trial.

## I. FACTS AND PROCEDURAL HISTORY

The following facts were established through testimony at defendant's preliminary examination. In February 2006, defendant Ronald James Plunkett, then an attorney living in Ann Arbor, met Tracy Ann Corson, a Livonia prostitute, after defendant allegedly told a Detroit drug dealer that he "wanted [the] company of a girl [who] would be provided drugs to go and to get high at his house." By May 2006, Corson had moved into defendant's apartment. They would "[get] high a lot" from crack cocaine and heroin that they purchased for $200 "[j]ust about every day" from a Detroit drug dealer named Harold Spencer. Because Corson did not have the financial resources to purchase drugs, defendant bankrolled their drug habits. A typical day for defendant and Corson included driving from Ann Arbor to a parking lot in northwest Detroit to purchase drugs from Spencer.

June 25, 2006, was no exception. After defendant arrived home from work, he and Corson drove to Detroit. As usual, defendant provided Corson with the drug money and drove her to meet their drug dealer, where Corson completed the drug transaction. The drug purchase routine was structured "so that when [she and defendant] met [their drug dealer] in the parking lot [Corson] could just jump out and hop in [the dealer's] car, get the drugs and come back." While driving back to Ann Arbor after the drug transaction, defendant smoked crack cocaine with Corson, and Corson injected herself with heroin. Both of them partied into the

night with defendant's ex-girlfriend at defendant's apartment. The three smoked crack cocaine together, and Corson gave defendant's ex-girlfriend heroin.

Around 3:00 a.m. on June 26, Corson received a phone call from a childhood friend, Tiffany Gregory, who was seeking drugs. Corson invited Gregory to defendant's apartment. Gregory arrived at defendant's apartment appearing visibly intoxicated but able to walk and talk. After the four smoked crack cocaine in the living room, Corson and Gregory went into a bedroom and injected themselves with heroin. Subsequently, Corson left the bedroom to use the bathroom. Upon her return, Corson observed that Gregory had passed out and was unresponsive and blue. Emergency medical services were summoned. While waiting for emergency personnel to arrive, Corson and defendant hid the remaining drugs. Attempts by paramedics to resuscitate Gregory failed, and she was pronounced dead at 5:14 a.m.

A forensic pathologist performed an autopsy on Gregory and determined her cause of death to be an accidental drug overdose. The toxicology report indicated that Gregory had ingested a lethal amount of heroin. Gregory also had cocaine metabolites in her system, as well as a blood alcohol level of 0.115 percent. The forensic pathologist testified that the combination of alcohol and drugs in Gregory's system had a synergistic effect on her body, but that heroin was the ultimate cause of death.

Defendant was arrested on four related drug charges: (I) delivery of a controlled substance causing death,[1] (II) delivery of less than 50 grams of a controlled substance (heroin),[2] (III) delivery of less than 50 grams of a controlled substance (cocaine),[3] and (IV) maintaining a drug house.[4] The district court bound defendant over for trial on all four counts.

Defendant moved in the circuit court to quash the bindover. Relevant to this appeal, defendant claimed with regard to counts I and II that Corson purchased the heroin for her personal use and, moreover, that he did not even know that Corson had purchased the heroin. Accordingly, defendant claimed that he could not be bound over for trial on these counts.

The prosecutor argued that defendant's conduct met the elements of counts I and II under two independent theories that the prosecutor claimed did not require defendant's physical transfer of the heroin to Corson. First, the prosecutor asserted that defendant aided and abetted the delivery of the heroin from Spencer to Corson. Alternatively, the prosecutor argued that the defendant effected a "constructive delivery" of the heroin from himself to Corson. The circuit court agreed with defendant, ruling that the district court had abused its discretion by

---

[1] MCL 750.317a.

[2] MCL 333.7401(2)(a)(*iv*).

[3]*Id*.

[4] MCL 333.7405(1)(d).

4

binding defendant over on counts I and II because defendant's actions did not constitute delivery of heroin to Corson. The court affirmed the district court's bindover on counts III and IV, and these charges are not at issue in this appeal.

The Court of Appeals granted the prosecution's delayed application for leave to appeal and affirmed the circuit court's decision to quash counts I and II.[5] The majority concluded that neither of the prosecution's theories supported a bindover on the two counts related to the delivery of heroin. The majority held that "no evidence was presented to support a finding that defendant aided and abetted the drug dealer in delivering the drugs to Corson" and that at most "the evidence in this case could support a finding that defendant aided and abetted Corson in *receiving* the heroin . . . ."[6] It further held that "a defendant constructively delivers a controlled substance when the defendant directs another person to convey the controlled substance under the defendant's direct or indirect control to a third person or entity."[7] It thereby concluded that "the heroin

---

[5] *People v Plunkett*, 281 Mich App 721; 760 NW2d 850 (2008).

[6] *Id.* at 730.

[7] *Id.* at 728, citing *Commonwealth v Murphy*, 577 Pa 275, 285; 844 A2d 1228 (2004) ("[A] defendant constructively transfers drugs when he directs another person to convey drugs under his control to a third person or entity."), and *Dawson v State*, 812 SW2d 635, 637 (Tex App, 1991) (stating that constructive delivery is defined as "the transfer of a controlled substance either belonging to an individual or under his direct or indirect control by some other person at the instance or direction of the individual accused of such constructive transfer").

purchased by Corson was not under defendant's control, nor did defendant direct the drug dealer to transfer the drugs to Corson."[8]

Judge SCHUETTE dissented, concluding that probable cause supported the prosecution's theory that defendant aided and abetted Spencer's delivery of the heroin to Corson. He reasoned that "there is evidence that defendant 'performed acts . . . that assisted the commission of the crime,' i.e., he provided the buyer and the money" and "knew that Spencer intended the crime at the time defendant gave aid."[9]

This Court scheduled argument on whether to grant the prosecution's application for leave to appeal or take other peremptory action and directed the parties to address "whether MCL 750.317a encompasses the defendant's actions in this case."[10]

## II. PRELIMINARY EXAMINATIONS

Neither the United States Constitution nor the Michigan Constitution requires a preliminary examination.[11] Rather, the Legislature has mandated preliminary examinations for felony charges:

---

[8] *Id.* at 729.

[9] *Id.* at 732 (SCHUETTE, J., dissenting), quoting *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006).

[10] 483 Mich 964 (2009).

[11] *People v Yost*, 468 Mich 122, 125; 659 NW2d 604 (2003).

6

Except as provided in [MCL 712A.4],[12] the magistrate before whom any person is arraigned on a charge of having committed a felony shall set a day for a preliminary examination . . . . At the preliminary examination, a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath . . . .[13]

The purpose of the preliminary examination is to determine whether "a felony has been committed and [whether] there is probable cause for charging the defendant therewith . . . ."[14] If there is probable cause, the magistrate must "bind the defendant to appear before the circuit court . . . , or other court having jurisdiction of the cause, for trial."[15]

As this Court explained in *People v Yost*, "[p]robable cause requires a quantum of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt."[16] This standard is less rigorous than the requirement to find guilt beyond a

---

[12] Whenever a juvenile 14 years of age or older is accused of an act that if committed by an adult would be a felony, a judge of the family division of circuit court may waive jurisdiction under MCL 712A.4. At that time, "the court shall determine on the record if there is probable cause to believe that an offense has been committed that if committed by an adult would be a felony and if there is probable cause to believe that the juvenile committed the offense." MCL 712A.4(3).

[13] MCL 766.4.

[14] MCL 766.13.

[15] *Id.*

[16] *Yost*, 468 Mich at 126, quoting *People v Justice (After Remand)*, 454 Mich 334, 344; 562 NW2d 652 (1997).

reasonable doubt to convict a criminal defendant, and "the gap between probable cause and guilt beyond a reasonable doubt is broad . . . ."[17]

## III. STANDARD OF REVIEW

Absent an abuse of discretion, reviewing courts should not disturb a magistrate's decision to bind a criminal defendant over for trial.[18] In the instant case, defendant argues that the district court's decision to bind him over on the two counts relating to the distribution of heroin was an abuse of discretion because his alleged conduct does not fit within the scope of the appropriate criminal statutes. Determining the scope of a statute is a matter of statutory interpretation and as such is reviewed de novo.[19]

When interpreting a statute, courts must "'ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.'"[20] This requires courts to consider "the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.'"[21]

---

[17] *Yost*, 468 Mich at 126.

[18] *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001).

[19] *Id.*

[20] *People v Thompson*, 477 Mich 146, 151; 730 NW2d 708 (2007), quoting *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

[21] *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999), quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

IV. ANALYSIS

Defendant was charged with violating MCL 333.7401(2)(a) (delivery of a schedule 1 or 2 narcotic controlled substance) and MCL 750.317a (delivery of a schedule 1 or 2 controlled substance causing death). As an initial matter, the facts adduced at the preliminary examination suggested that two separate deliveries of a schedule 1 controlled substance (heroin) occurred during the evening of June 25 to 26, 2006: when Spencer sold the heroin to Corson and when Corson gave the heroin to Gregory. The prosecution's allegations against defendant are premised solely on the delivery of heroin from Spencer to Corson. Accordingly, this Court's analysis only examines defendant's involvement in the delivery of heroin from Spencer to Corson. As a necessary premise of the prosecution's aiding and abetting theory, we first conclude that Spencer's delivery of heroin to Corson violated both statutes. We also conclude that defendant's conduct provided probable cause that he aided and abetted this delivery, thus supporting a bindover on both charges.

A. SPENCER'S DELIVERY OF HEROIN TO CORSON

At oral argument before this Court, defense counsel admitted that Spencer's delivery of heroin to Corson violated both MCL 333.7401 and MCL 750.317a. It is thus unchallenged that, on the basis of the evidence presented at defendant's preliminary examination, there is probable cause to conclude that Spencer delivered heroin in violation of MCL 333.7401 and delivered heroin causing death

9

in violation of MCL 750.317a when he sold the heroin to Corson that subsequently killed Gregory.

MCL 333.7401 provides, in relevant part:

> (1)   Except as authorized by [MCL 333.7101 *et seq.*], a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . .

> (2)  A person who violates this section as to:

> (a)  A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in [MCL 333.7214(a)(*iv*)] and:

> * * *

> (iv)   Which is in an amount less than 50 grams, of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

The Legislature has determined that heroin, a narcotic, is a schedule 1 controlled substance within the meaning of the controlled substances act.[22]  In directly selling heroin to Corson, Spencer violated MCL 333.7401.

It is also clear that Spencer violated MCL 750.317a (delivery of heroin causing death).  The Legislature recently added MCL 750.317a to the Michigan Penal Code.[23]  It provides, in relevant part:

> A person who delivers a schedule 1 or 2 controlled substance . . . to another person in violation of . . . MCL 333.7401 . . . that is consumed by that person or any other person

---

[22] MCL 333.7212(b).

[23] 2005 PA 167.

and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

It is clear from the plain language of the statute that MCL 750.317a provides an additional punishment for persons who "deliver[]" a controlled substance in violation of MCL 333.7401 when that substance is subsequently consumed by "any . . . person" and it causes that person's death. It punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death.

Consequently, MCL 750.317a is a general intent crime, and as such does not require the intent that death occur from the controlled substance first delivered in violation of MCL 333.7401. Rather, the general intent required to violate MCL 750.317a is identical to the general intent required to violate MCL 333.7401(2)(a): the *delivery* of a schedule 1 or 2 controlled substance. Accordingly, Spencer violated MCL 750.317a when he sold heroin to Corson because that heroin subsequently caused Gregory's death.

B. DEFENDANT'S ROLE IN THE DELIVERY OF HEROIN TO CORSON

Given that Spencer's delivery of heroin violated both statutes at issue here, the question posed in this appeal is whether *defendant's* actions make him as culpable as Spencer under the law. The prosecution does not argue that defendant physically delivered the heroin to Corson; rather, the prosecution argues that he

11

aided and abetted Spencer's delivery of heroin to Corson.[24]  Under our aiding and

abetting statute,

> [e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.[25]

This Court recently described the three elements necessary for a conviction under

an aiding and abetting theory:

> "'(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.'"[26]

A bindover is required when probable cause exists to support each of the elements

of a crime.[27]

As stated, it is not contested that the first element was established.  There

was ample evidence to support probable cause that Spencer committed both

---

[24] The prosecution also alleges that defendant constructively transferred the heroin to Corson within the meaning of MCL 333.7105(1).  Because a bindover is supported by the prosecution's aiding and abetting theory, this Court need not decide whether the Court of Appeals correctly ruled on the alternative theory in order to reinstate the district court's bindover.

[25] MCL 767.39.

[26] *Robinson*, 475 Mich at 6, quoting *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).

[27] See *Yost*, 468 Mich at 126.

crimes at issue when he sold heroin to Corson. Thus, to sustain the prosecution's aiding and abetting theory, the evidence must support defendant's act of encouragement and assistance of Spencer's crime (element 2) as well as defendant's knowledge of Spencer's criminal delivery to Corson or defendant's intent that this delivery crime be committed (element 3). We believe that the evidence presented at the preliminary examination more than satisfies all three aiding and abetting elements.

Defendant claims that at most he assisted Corson in *obtaining possession* of heroin from Spencer, but did not assist Spencer in *delivering* heroin to Corson. Defendant's analysis, which has been accepted by the circuit court, the Court of Appeals majority, and this Court's dissent, conflates two crimes—possession and delivery—such that defendant's focus on the possessory crime obscures the delivery crime. What the lower courts and the dissenting justices have failed to appreciate is that a criminal "delivery" of narcotics necessarily requires *both* a deliverer and a recipient. Accordingly, a defendant who assists *either* party to a criminal delivery necessarily aids and abets the deliverer's commission of the crime because such assistance aids and abets the *delivery*.[28]

---

[28] Whether defendant is *also* liable for aiding and abetting the separate criminal offense of possession of narcotics is irrelevant to this Court's inquiry into whether he aided and abetted the delivery. The dissent errs by claiming that "defendant gave no assistance to Spencer, the actual perpetrator of the delivery offense." *Post* at 2. To the contrary, defendant drove Corson to Spencer and provided the money that effected the delivery of illicit narcotics. Without

13

Corson testified that defendant drove her from Ann Arbor to Detroit on the day in question for the specific purpose of engaging in a drug transaction with Spencer. Moreover, defendant paid for the heroin that Corson used on the drive back to Ann Arbor, provided to defendant's ex-girlfriend in defendant's apartment, and subsequently shared with Gregory in defendant's apartment. Furthermore, the evidence adduced at the preliminary examination suggests a consistent pattern of heroin activity—from acquisition to consumption—in defendant's presence. As the district court held, this evidence was sufficient to establish probable cause that defendant "performed acts or gave encouragement that assisted" the delivery of heroin from Spencer to Corson on the day in question and, furthermore, that he "intended . . . or had knowledge" that Spencer would deliver heroin to Corson.[29]

---

defendant's conduct, Spencer would not have sold the narcotics to Corson on June 25, 2006.

Furthermore, the dissent erroneously claims that this decision "renders . . . obsolete" the charge of possession of narcotics under an aiding and abetting theory. *Post* at 3. Such a charge remains distinct from aiding and abetting the delivery of narcotics. Someone who provides no encouragement or assistance for the initial delivery of narcotics to a possessor can nevertheless aid and abet the *continued* possession of narcotics.

[29] *Robinson*, 475 Mich at 6. Although defendant alleges that he neither intended nor knew that Corson would deliver the heroin to Gregory on the night of Gregory's death, such knowledge or intention is irrelevant to whether he violated MCL 333.7401 and MCL 750.317a by aiding and abetting *Spencer's* delivery to *Corson*.

Moreover, defendant's unsupported claim to the circuit court that he neither intended nor knew that Spencer would deliver heroin to Corson is not sufficient to

The Court of Appeals majority attempted to distinguish the instant case from three earlier Court of Appeals cases applying Michigan's aiding and abetting doctrine to the delivery of narcotics. In *People v Izarraras-Placante*,[30] the defendant drove a drug dealer to a transaction with an undercover police officer, was overheard discussing the price with the drug dealer, and was identified by the drug dealer as his partner. In *People v Lyons*,[31] the defendant answered a hotel room door, asked an undercover officer what he desired, and led the officer into the room to obtain heroin from another person inside the room. In *People v Berry*,[32] the defendant met an undercover officer who was going to purchase

---

quash the bindover. This argument seems to have been abandoned in this Court, as defense counsel admitted in this Court that defendant "[a]ssisted Corson in possessing the drugs" without distinguishing between the heroin and the crack cocaine.

More important, a bindover decision must be based on *evidence*, not arguments of counsel. At the preliminary examination, as recounted earlier, the testimony of Corson established probable cause that defendant intended Spencer to deliver heroin to Corson on the day in question and that Spencer had routinely done so previously. As stated, probable cause merely requires "a quantum of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt." *Yost*, 468 Mich at 126 (citation omitted). The evidence presented at the preliminary examination indicated that defendant's and Corson's actions on the day in question were part of their ordinary pattern of drug activity, which provides a reasonable inference that defendant knew and intended that Spencer would deliver heroin to Corson on the day in question.

[30] *People v Izarraras-Placante*, 246 Mich App 490; 633 NW2d 18 (2001).

[31] *People v Lyons*, 70 Mich App 615; 247 NW2d 314 (1976).

[32] *People v Berry*, 101 Mich App 399; 300 NW2d 575 (1980).

cocaine from a drug dealer, convinced the officer to obtain the cocaine from another drug dealer, and coordinated the transaction. When the undercover officer suggested that the defendant pool his money with the officer's money to get a better price on narcotics, defendant did so. They therefore purchased the narcotics together.

By including these three cases as comparative examples of aiding and abetting the delivery of narcotics, the Court of Appeals majority implied that the evidence in this case was insufficient to establish probable cause for a bindover. However, none of these cited cases supports the requirement the Court of Appeals majority imposed that a defendant charged with aiding and abetting the delivery of narcotics must have aided and abetted only the person who *delivered* the narcotics.[33]

Thus, the Court of Appeals majority erred by confining its inquiry to whether "defendant aided and abetted *the drug dealer* in delivering the drugs to

---

[33] To the contrary, the facts in *Berry* also suggested that the defendant there was in a similar position to defendant in the instant case: the defendant and the undercover officer collaborated to purchase narcotics from a drug dealer and did purchase narcotics from a drug dealer, which they then split. As in *Berry*, the evidence presented at the instant defendant's preliminary examination suggested that he "was more than a mere bystander," that he "encouraged the transaction 'knowingly with the intent to aid the possessor [to] obtain or retain possession,'" and that he "took an active role in arranging the delivery" of the narcotics. *Id.* at 402, quoting *People v Doemer*, 35 Mich App 149, 152; 192 NW2d 330 (1971). The similarities between the instant case and *Berry* further belie the dissent's claim that "defendant gave no assistance to Spencer, the actual perpetrator of the delivery offense." *Post* at 2. Without defendant's actions, this drug transaction would not have occurred.

16

Corson."[34]  Instead, the crux of the appropriate inquiry is whether defendant aided and abetted *the delivery itself* by assisting any party to that transaction.  Such assistance to any party to an illegal transaction necessarily "encourage[s], support[s], or incite[s] the commission of that crime."[35]  Because defendant drove Corson to purchase heroin and supplied the money for the heroin, there is probable cause to bind defendant over for violating MCL 333.7401 and MCL 750.317a.  The district court, therefore, did not abuse its discretion by binding defendant over on these charges.

## V.  CONCLUSION

A defendant who transported another person to an illegal narcotics transaction, provided the money for this transaction, and intended that the money be used to purchase narcotics may be bound over for trial under MCL 750.317a and MCL 333.7401(2)(a) for aiding and abetting the delivery of narcotics.  The Court of Appeals erred by concluding that probable cause did not exist to support a bindover on these charges.  Accordingly, the judgment of the Court of Appeals is

---

[34] *Plunkett*, 281 Mich App at 730 (emphasis added).

[35] *Moore*, 470 Mich at 63.  The dissent fails to reconcile its position that "aiding and abetting requires that there be some 'assistance given to the perpetrator of a crime,'" *post* at 2, quoting *Moore*, 470 Mich at 63 (emphasis omitted), with the fact that any assistance given to the *recipient* of an illegal delivery to aid in her possession of narcotics necessarily assists the *deliverer* in delivering those narcotics.

17

reversed, the district court's bindover is reinstated, and this case is remanded to the Washtenaw Circuit Court for trial.  We do not retain jurisdiction.

Robert P. Young, Jr.
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                         No. 138123

RONALD JAMES PLUNKETT,

      Defendant-Appellee.

---

KELLY, C.J. (*dissenting*).

I respectfully dissent. In my view, defendant performed no act and gave no encouragement that assisted the delivery of heroin by Harold Spencer to Tracy Corson. Therefore, probable cause was lacking for a critical element necessary to support a conviction under an aiding and abetting theory. I would affirm the judgment of the Court of Appeals.

I agree with the majority opinion's recitation of the facts and the applicable legal standard that must be satisfied to support a conviction for aiding and abetting. That standard requires that probable cause exist to support the following elements of a crime before a defendant may be bound over on a charge of aiding and abetting the crime:

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had

knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement."[1]

The majority is also correct that a "delivery" of narcotics requires both a deliverer and a recipient. I do not agree, however, that this fact commands the conclusion that "a defendant who assists *either* party to a criminal delivery necessarily aids and abets the deliverer's commission of the crime because such assistance aids and abets the *delivery*."[2] Rather, aiding and abetting requires that there be some "assistance *given to the perpetrator of a crime* by words or deeds that are intended to encourage, support, or incite the commission of *that crime*."[3] I therefore disagree with the majority that "the crux of the appropriate inquiry is whether defendant aided and abetted the delivery itself by assisting any party to that transaction."[4] Indeed, the language quoted from *People v Moore* belies such a conclusion.

Under the standard elucidated in *Moore*, two key pieces of evidence are lacking here. First, defendant gave no assistance to Spencer, the actual perpetrator of the delivery offense. Second, the "deeds" in which defendant engaged to

---

[1] *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).

[2] *Ante* at 13.

[3] *Moore*, 470 Mich at 63, citing *People v Palmer*, 392 Mich 370, 378; 220 NW2d 393 (1974) (emphasis added). *Palmer* similarly held that the term "'aiding and abetting' is used to describe all forms of assistance *rendered to the perpetrator of a crime*." *Palmer*, 392 Mich at 378 (emphasis added).

[4] *Ante* at 17 (emphasis deleted).

encourage the commission of a crime were directed solely to Corson's crime of possession, not Spencer's delivery offense.

Under the majority's analysis, any third party who assists in a drug transaction may be charged with delivery of those drugs under an aiding and abetting theory. This conclusion is overly broad. What conduct is left to support a charge of *possession* of a controlled substance under an aiding and abetting theory? In my view, today's decision renders such a charge obsolete, as the prosecution may always charge someone who aids and abets possession with aiding and abetting the delivery of the controlled substance. Thus, it is the majority rather than the dissent that conflates the crimes of delivery and possession.

Illustrating this point is the fact that "possession" of a controlled substance and "delivery" of that substance are distinct offenses. The prescribed punishment for each offense is outlined in great detail in the applicable statutes.[5] Therefore, it is contrary to those statutes to allow all aiders and abettors of the offense of possession of drugs to be charged as aiders and abettors of the delivery.

Defendant indisputably participated in and encouraged the commission of a crime: namely, Corson's possession of the heroin. But he did nothing to

---

[5] See, e.g., MCL 333.7401 and MCL 333.7403.

3

encourage or assist the commission of the crime that he was charged with aiding and abetting: Spencer's delivery of the heroin to Corson.

*People v Doemer*[6] is also informative on this point. In *Doemer*, the defendant was charged with possession of marijuana under an aiding and abetting theory. The Court of Appeals concluded that, to uphold the conviction, "[t]he act or encouragement must be done knowingly with the intent to aid the possessor [to] obtain or retain possession."[7] Defendant's acts in this case fall squarely within this language and fully support a charge of possession of heroin under an aiding and abetting theory.

Therefore, I believe the Court of Appeals correctly affirmed the circuit court's order quashing the bindover. Accordingly, I would affirm the judgment of the Court of Appeals

> Marilyn Kelly
> Michael F. Cavanagh
> Diane M. Hathaway

---

[6] *People v Doemer*, 35 Mich App 149; 192 NW2d 330 (1971).

[7] *Id.* at 152.