# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DARON MANDEL EVANS,

       Defendant-Appellant.

UNPUBLISHED
July 16, 2015

No.  321909
Oakland Circuit Court
LC No.  2012-243961-FC

Before:  HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Following a jury trial, defendant was found guilty of one count of delivery of a controlled substance causing death, MCL 750.317a, and two counts of delivery of a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*).  He was sentenced as an habitual offender, fourth offense, MCL 769.12, to serve 18 to 60 years' imprisonment for delivery of a controlled substance causing death, and 5 to 30 years' imprisonment for his other two convictions.  Because the prosecutor presented sufficient evidence to support defendant's conviction for delivery of a controlled substance causing death and he is not entitled to resentencing, we affirm.

In February of 2012, Ross Brown died from drug intoxication after using narcotics that had been purchased from defendant.  In particular, Brown and his friends, Justin Croteau, Nick Rossow, and Adam Utley, were drinking alcohol and hanging out at the home of Utley's parents when they decided to procure cocaine.  Corteau then met with defendant.  He asked him for "blow," and defendant gave him a folded-up lottery ticket containing what Croteau believed to be cocaine.  After the substance was divided, the friends each "did two lines a piece."  Sometime thereafter, Brown passed out.  The following morning, Brown was found cold and unresponsive.  The authorities were called, and Brown was pronounced dead.

Testing of the residue on the packaging in which the narcotic had arrived revealed that the substance was heroin, not cocaine.  Brown's blood tested positive for opiates, and more specifically tested positive for morphine, which results as the body metabolizes monoacetylmorphine, i.e., 6-MAM, which is an identifier of heroin.  Brown's blood also contained codeine, a common contaminant in heroin.  A medical examiner, Kanu Virani, M.D., was qualified as an expert in forensic pathology and he ultimately opined that Brown's cause of death was "drug intoxication."  After Croteau identified defendant in a photographic array, Croteau assisted the police with two controlled purchases from defendant, both of which resulted

in Croteau purchasing heroin from defendant. During a subsequent search of defendant's home, police found additional heroin in folded-up packets as well as other evidence of drug activity. The jury convicted defendant as noted above. He now appeals as of right.

On appeal, defendant argues that the evidence was insufficient to support his conviction for delivery of a controlled substance causing death. Specifically, defendant emphasizes that morphine has legitimate therapeutic uses, and he maintains that, absent the actual presence of heroin or 6-MAM in Brown's blood, there was insufficient evidence that defendant's delivery of heroin caused Brown's death.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). Circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of a crime. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). Moreover, this Court will not interfere with the jury's role as fact-finder. *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). Rather, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant was convicted under MCL 750.317a, which provides:

> A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of section 7401 of the public health code, 1978 PA 368, MCL 333.7401, that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

MCL 333.7401(2)(a) provides that a person shall not manufacture or deliver a schedule 1 or 2 controlled substance. Heroin is specifically designated as a schedule 1 controlled substance. MCL 333.7212(1)(b). Delivery of a controlled substance causing death is a general intent crime, requiring only the general intent to deliver a schedule 1 or 2 controlled substance, not the specific intent to cause death. *People v Plunkett*, 485 Mich 50, 60; 780 NW2d 280 (2010). "It punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death." *Id.*

Viewed in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction under MCL 750.317a. The evidence showed that Brown did not appear intoxicated or under the influence of drugs when he arrived at Utley's parents' home on the night in question. Defendant then delivered narcotics to Corteau. Brown ingested a portion of those narcotics and he was found dead the next morning. Testing determined that the substance purchased from defendant was heroin. Brown had morphine in excess of therapeutic levels in his blood as well as low, non-therapeutic levels of codeine, which is often a

contaminant in heroin. Virani, an expert in forensic pathology, opined that the cause of Brown's death was "drug intoxication" and that the "major portion" of the drug contributing to the death was morphine and that the minor part was alcohol.[1]

Contrary to defendant's arguments on appeal, the conclusion that the morphine causing Brown's death related to the heroin provided by defendant was a fair inference from the evidence at trial, particularly in light of the testimony of Dr. Gary Kunsman, an expert in forensic toxicology. Kunsman explained that heroin is a synthetic opiate, "made from two molecules of morphine." When heroin is ingested into the body, very rapidly, within 9 or 10 minutes, the heroin is converted into an intermediate called 6-MAM, which is "a unique indicator of the use of heroin" because there is no other way to get 6-MAM than to metabolize it from heroin. However, within a short time, the body then converts the 6-MAM into morphine. As a result, Kunsman explained that, if a decedent lived 90 minutes after ingesting heroin, there will be morphine present in the decedent's system but no heroin and no 6-MAM. Because codeine is so often seen as a contaminant in heroin, Kunsman also explained that he considered the lower than therapeutic level of codeine in Brown's blood to be "a valuable marker" to indicate that the morphine resulted from heroin use. It reasonably follows from Kunsman's explanation that, contrary to defendant's arguments, the lack of heroin or 6-MAM in Brown's system at the time of testing does not preclude the conclusion that Brown died as a result of heroin use. Rather, given that Brown ingested heroin that night, it is reasonable to infer that the morphine found in his blood had been metabolized from the heroin provided by defendant, and thus it would be reasonable to conclude, based on the evidence, that Brown died as a result of consuming heroin delivered by defendant. In sum, the prosecutor presented sufficient evidence to support defendant's conviction under MCL 750.317a.

Next, defendant argues that he is entitled to resentencing due to an alleged error in the scoring of offense variable (OV) 6. The trial court scored OV 6 at 50 points, while defendant asserts that it should have been scored at zero points because he had no intent to kill Brown and, absent an intent to kill, OV 6 can only be scored at 50 points in cases involving convictions for felony murder under MCL 750.316(1)(b). Specifically, given the similarities between the language in OV 6 and the felony murder statute,[2] defendant argues that the "language in MCL

---

[1] Although Brown had also ingested alcohol on the night in question, Virani opined that the amount of alcohol in Brown's system would not have been sufficient, by itself, to cause death. In comparison, Virani explained that the morphine alone would have been enough to kill Brown. It was also explained at trial that not everyone in a group ingesting approximately the same amount of alcohol and heroin would be affected the same way.

[2] Under the felony murder statute, MCL 750.316(1)(b), a person who commits the following is guilty of first-degree murder:

> Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first or second degree under

777.36(1)(a) plainly refers to felony murder, not to delivery of a controlled substance causing death." In the alternative, defendant argues in a Standard 4 brief that defense counsel was ineffective for failing to challenge the 50 point score at sentencing.

Defendant filed a motion to remand in this Court and thus preserved his scoring challenge for our review. MCR 6.429(C); *People v Jackson*, 487 Mich 783, 795-796; 790 NW2d 340 (2010).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

OV 6 addresses an offender's intent to kill or injure another individual. MCL 777.36(1). Fifty points should be scored when:

> The offender had premeditated intent to kill *or the killing was committed while committing or attempting to commit* arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, *a major controlled substance offense*, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer. [MCL 777.36(1)(a) (emphasis added).]

The sentencing court must score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

In this case, defendant maintains that there was no evidence he intended to kill Brown and that, in the absence of such evidence, OV 6 could only be scored 50 points in relation to a felony-murder conviction. However, defendant's attempt to limit the scoring of OV 6 at 50 points to cases involving premeditated intent to kill or a felony murder conviction under MCL 750.316(1)(b) is unavailing. According to the plain language of OV 6, "the scoring of 50 points is appropriate when the offender has the premeditated intent to kill *or* the killing was committed in the course of the commission of one of the enumerated offenses." *People v Bowling*, 299 Mich App 552, 561; 830 NW2d 800 (2013) (emphasis in original). The statute does not require a felony murder conviction. Rather, in the absence of a premeditated intent to kill, all that is required by the statutory language is that the killing occurred in the course of committing or attempting to commit one of the enumerated offenses. See *id.*

One of the enumerated crimes listed in OV 6 is a "major controlled substance offense." MCL 777.36(1)(a). By statute, "a major controlled substance offense" is defined to include violation of MCL 333.7401(2)(a). MCL 761.2(a); *People v Fetterley*, 229 Mich App 511, 526-

section 145n, torture under section 85, aggravated stalking under section 411i, or unlawful imprisonment under section 349b.

527; 583 NW2d 199 (1998). As noted, MCL 333.7401(2)(a) prohibits delivery of a schedule 1 or 2 narcotic, and defendant violated this provision by delivering heroin to Croteau. See MCL 750.317a. Because defendant delivered the heroin that killed the victim, a killing occurred while defendant committed a major controlled substance offense and OV 6 was thus properly scored at 50 points.

Given that the sentencing court properly scored OV 6, defendant's counsel was not ineffective for failing to raise a meritless challenge to the scoring of the offense variable. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Affirmed.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter