*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CATRELL JAVON SHELTON, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

CATRELL JAVON SHELTON,

      Respondent-Appellant.

UNPUBLISHED
May 18, 2023

No. 363578
Ingham Circuit Court
Family Division
LC No. 22-000404-DL

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Respondent is charged with open murder for the shooting death of Mathews. Because respondent was a minor when the offense occurred, petitioner initially filed a delinquency petition in the trial court. Later, petitioner filed a motion asking the court to waive jurisdiction and allow respondent to be tried as an adult. Petitioner also asked for a charge of carrying a concealed weapon to be added. Following the first phase of the waiver hearing, the court determined that there was probable cause that respondent committed the offenses of open murder and carrying a concealed weapon. And, after the second phase of the waiver hearing, the court found that the interests of respondent and the public would be best served by waiver. Consequently, the court waived jurisdiction over respondent and transferred the matter to the criminal division of the circuit court. Respondent appeals that decision as of right. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Mathews was shot dead on May 6, 2022. The shooting was witnessed by BP, a 13-year-old who was a friend of Mathews. At the first phase of the waiver hearing, BP testified that before the shooting he got a ride from Mathews. He was in the front seat with Mathews; respondent and two other individuals were in the backseat. BP recounted that respondent put a gun to Mathews's

-1-

head and warned him that he "better not reach for your blick."[1] Gunfire then erupted from the backseat. BP stated that two different guns were fired. He put his head down, so he did not see who was firing. However, before the shooting started, he saw respondent with a "FN" gun in his hand, and after the shooting, he witnessed respondent's co-respondent put a .45-caliber gun into his pants. BP stated that he fell out of the car, saw Mathews lying on the ground, and ran away from the scene.

## II. WAIVER HEARING

## A. STANDARD OF REVIEW

Respondent argues that the trial court erred by waiving jurisdiction. This Court reviews a decision on a motion to waive jurisdiction for an abuse of discretion. *People v Fultz*, 453 Mich 937, 937; 554 NW2d 725 (1996). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). We review for clear error the court's findings of fact. MCR 2.613(C); MCR 3.902(A). A trial court's "finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted).

## B. ANALYSIS

"Generally, the family division of the circuit court (family court) has exclusive jurisdiction over juveniles under [eighteen] years of age who commit criminal offenses." *People v Conat*, 238 Mich App 134, 139; 605 NW2d 49 (1999), citing MCL 712A.2(a)(1).[2] But the jurisdiction may be waived either automatically if the offense is a "specified juvenile violation" under MCL 600.606[3] or by a traditional waiver under MCL 712A.4. Under a traditional waiver, a court may waive its jurisdiction to the circuit court upon a motion by the prosecuting attorney. MCL 712A.4(1). Traditional-waiver hearings consist of two phases. MCR 3.950(D). During the first phase, the court must "determine whether there is probable cause to believe that an offense has

---

[1] A blick is a term used to refer to a gun.

[2] At the time *Conat* was decided, MCL 712A.2(a)(1), as amended by 1998 PA 478, provided for family division jurisdiction of "a juvenile under 17 years of age" who committed a criminal offense. However, effective October 1, 2021, MCL 712A.2(a)(1) was amended to increase this age ceiling to 18 years of age. 2019 PA 113. See also MCL 712A.1(1)(i), which was amended, effective April 4, 2021, to provide, "Beginning October 1, 2021, 'juvenile' means a person who is less than 18 years of age who is the subject of a delinquency petition." 2020 PA 389.

[3] MCL 750.316 (murder) is included as a "specified juvenile violation." MCL 600.606(2)(a). However, petitioner chose to initiate proceedings in the family division of the circuit court and to request a traditional waiver. On appeal, petitioner contends that because an automatic waiver was available, there can be no error in the trial court's waiver decision. However, the availability of an alternative means of achieving a waiver of the court's jurisdiction, does not mean that the court's analysis under a traditional waiver framework is incapable of being considered.

been committed that if committed by an adult would be a felony" and that the respondent "committed the offense." MCR 3.950(D)(1). See also MCL 712A.4(3). During the second phase, the court must "determine whether the interests of the juvenile and the public would best be served by granting the [waiver] motion." MCR 3.950(D)(2). See also MCL 712A.4(4).

## 1. FIRST PHASE

Respondent argues that the trial court abused its discretion by finding that there was probable cause to believe that the alleged offenses were committed by him. In the first phase, the court must make two determinations on the record: (1) whether "there is probable cause to believe that an offense has been committed that if committed by an adult would be a felony," and (2) whether "there is probable cause to believe that the juvenile who is 14 years of age or older committed the offense." MCR 3.950(D)(1); see also MCL 712A.4(3). "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010) (quotation marks, citation, and alteration omitted). The prosecuting attorney has the burden to present legally admissible evidence demonstrating each element of the offense and to establish probable cause that the juvenile committed the offense. MCR 3.950(D)(1)(b).

Here, the court's finding of probable cause was based upon its finding that BP's testimony was credible. On appeal, respondent argues that the credibility finding was clearly erroneous. In support, he directs this Court to inconsistencies, contradictions, and "outright falsehoods" among BP's prior statements to law enforcement and his testimony at the waiver hearing. He asserts that BP was a wholly unreliable witness and that his testimony should have been disregarded because it lacked credibility.

In analyzing BP's credibility, the court found:

The Court listened to the testimony. The biggest argument that has been made is the credibility of the 13-year-old witness that links these two young men to the scene in the car when the shooting occurred. The Court finds that his testimony about them being in the car with weapons to be credible. There are a lot of questions about credibility on details but as was noted, when you look at the jury instruction for credibility, which is a guide, this Court is not in the position of employing jury instructions other than to give a guide for the legal framework within which I must base my opinion.

The age of the witness, [BP], is 13. While he is a pretty sophisticated 13-year-old with knowledge of guns, with knowledge of the streets, with knowledge of the language of the streets, what is not in dispute is he's 13. What is also not in dispute is just based upon the conduct of the people in the gallery during his testimony, the kind of stress, fear and anguish that young man must experience every day, having been present where a murder occurred for a dear friend, could really contribute to him being all over the place. He admitted he didn't want to be a rat, a snitch. When you're living in the streets where that young man is living, that's real and the stories change depending upon how fearful you are for your life.

> That young man didn't want to be here today. That young man was only here because we had officers get him. That's real. The Court considers that when considering the credibility of his testimony.

The court also found:

> I believe what [BP] said about that based upon his reaction. His statements were corroborated by the sloppy use of social media that both [co-respondent] and [respondent] engaged in. It was corroborated because they had the guns. While sitting listening to the testimony, I had an opportunity, which being in court allows, to look at [co-respondent] and [respondent] as the evidence was being presented. Their reaction also corroborates that they had possession of guns when they were on social media, which makes it fair and reasonable to assume that the testimony of [BP] that they had guns on their person on that day is believable. Their behavior on social media, as well as their response when they watched the video corroborate that.

We conclude that, notwithstanding that respondent has directed this Court to weaknesses in BP's testimony, the trial court did not err by finding BP credible. The court's decision, which was based upon its observations of BP, respondent and co-respondent, and the conduct of individuals in the gallery, was not improper. Indeed, this Court must defer to the trial court's "superior position to evaluate the credibility of witnesses who testified before it." *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020). See also MCR 2.613(C) (stating that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").

BP's testimony supported the trial court's finding that respondent had a gun and pointed it at Mathews's head, that respondent's co-respondent had a gun, that the third individual in the backseat did not have a weapon, that respondent and his co-respondent were in the backseat of the vehicle, and that shots were fired from the back of the vehicle directly after respondent put a gun to Mathews's head. Further, Mathews was pronounced dead at the scene. Forensic evidence also demonstrated that shell casings were found inside the vehicle from the same type of guns respondent and his co-respondent were seen holding. As a result, the evidence supports the court's finding that respondent had a gun and that both respondent and his co-respondent fired their weapons from the backseat of the vehicle toward Mathews in the front seat, and Mathews died after being shot. In addition, respondent was charged with "open murder," and therefore the degree does not have to be specified. See *Johnson*, 427 Mich at 108. Thus, on this record, there is enough to "conscientiously entertain" a reasonable belief that respondent either fired the shots that resulted in Mathews's death, or acted in concert with his co-respondent to cause Mathews's death and is guilty of felony murder or guilty on an aiding and abetting theory, based on the evidence presented. *Plunkett*, 485 Mich at 57. The trial court, therefore, did not clearly err by finding that there was probable cause to believe that respondent committed the offenses of open murder and carrying a concealed weapon.

## 2. SECOND PHASE

If the trial court finds the requisite probable cause at the first-phase hearing, a "second-phase hearing shall be held to determine whether the interests of the juvenile and the public would best be served by granting the motion." MCR 3.950(2); see also MCL 712A.4(4). In making this determination, the trial court is required to consider the following six factors:

> (*i*) the seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the effect on any victim;
>
> (*ii*) the culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines;
>
> (*iii*) the juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior;
>
> (*iv*) the juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming;
>
> (*v*) the adequacy of the punishment or programming available in the juvenile justice system;
>
> (*vi*) the dispositional options available for the juvenile. [MCR 3.950(D)(2)(d); see also MCL 712A.4(4).]

The trial court must give "greater weight to the seriousness of the alleged offense and the juvenile's prior record of delinquency than to the other criteria." MCL 712A.4(4). There also must be evidence in the record regarding the suitability of programs and facilities available in the juvenile and adult correctional systems, and the trial court must refer to this evidence. *People v Dunbar*, 423 Mich 380, 388; 377 NW2d 262 (1985). Here, the trial court considered the six factors stated in MCR 3.950(D)(2)(d) and MCL 712A.4(4), and, as required by MCL 712A.4(4), it gave greater weight to the seriousness of the offense and respondent's prior delinquency record. We consider the analysis of each factor in turn.

First, respondent was accused of murder, which is an undeniably extremely serious offense. See *People v Parks*, 510 Mich 225, 256; 987 NW2d 161) ("There can be no dispute that any form of murder is one of the most severe and heinous crimes that a person can commit in any jurisdiction[.]"). In finding that factor one favored a waiver of jurisdiction, the trial court properly noted the seriousness of the offense. The court also found that the use of firearms—which were displayed on social media—was an aggravating factor. We discern no error in the court's determination that factor one favors waiver of jurisdiction.

Second, the testimony and evidence presented demonstrate respondent was culpable. And, although respondent disagrees with the trial court's credibility assessment of BP, we will defer to that determination, which was based on the trial court's observation of the witness while he was testifying. See MCR 2.613(C). This factor, therefore, favors waiver.

Third, respondent's prior record of delinquency also favors waiver. Although respondent was only found responsible for one curfew violation and pleaded guilty to one charge of "disorderly person, jostling," respondent's record demonstrated that he was also involved in many encounters with the police for larceny, shoplifting, attempted robbery, vehicle theft, traffic infractions, possession of a firearm, and disorderly conduct. In addition, respondent had an extensive delinquency record regarding his behavior in school, which included multiple suspensions for behavioral issues and ultimately expulsion. Given the nature of all of these offenses and respondent's behavioral issues, the trial court did not abuse its discretion by concluding that this factor weighed in favor of waiving jurisdiction.

Next, as to factor four, the record demonstrates that respondent did not participate in programming, and therefore, the trial court's decision that this factor weighed in favor of waiver was not an abuse of discretion. Respondent participated in counseling in 2017, and at the time of this offense, he was participating in probationary services in March 2022, including cognitive behavioral therapy, group intervention courses, mental health services, and mental health counseling, but failed to comply with the terms of his probation.

Regarding factors five and six, the record demonstrated that a secure juvenile facility was the only option available to respondent in the juvenile system because of the seriousness of the offense committed. Other placement options, such as the Youth Center in which respondent had initially been placed, were inadequate because of the seriousness of the offense and respondent's lack of benefit from the services he was already receiving there. Although there was not specific evidence of what respondent's needs were, there was sufficient evidence of the suitability of programs and facilities in the juvenile and adult systems that the trial court considered. *Dunbar*, 423 Mich at 388. As a result, the adult system, rather than the juvenile system, would better suit respondent's needs based on the seriousness of the offense. Further, because respondent could only be under the jurisdiction of the juvenile system until he was 21 years old, and he was 17 years old at the time of the second-phase hearing, respondent would age out of the juvenile system after only four years. As a result, the juvenile system was inadequate to punish respondent for this offense, for which respondent could be sentenced to life imprisonment for in the adult system. Therefore, this weighs in favor of waiver of jurisdiction.

In conclusion, the trial court did not abuse its discretion by determining that the interests of respondent and the public would be best served by a waiver.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly