*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHAD ALLYN KING,

       Defendant-Appellant.

UNPUBLISHED
July 18, 2024

No. 366268
Ingham Circuit Court
LC No. 22-000239-FH

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*), and possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant to serve concurrent terms of 78 to 240 months' imprisonment for his delivery of methamphetamine and possession with intent to deliver methamphetamine convictions.[1] We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a multiagency undercover narcotics investigation of defendant's residence, which culminated in a "controlled buy," in which an undercover detective arranged to purchase methamphetamine at a Lansing home known to be occupied by defendant. The detective testified at trial that he arranged to purchase the drugs from a woman named Erica Miller, who told him that he would have to wait until defendant arrived at the house because defendant had the drugs. As the detective approached the house, he observed defendant's pickup truck pulling into the driveway. Miller let the detective into the home, which enters into a shared kitchen and living room area.

---

[1] Defendant was also convicted of three counts of felon in possession of a firearm, MCL 750.224f, for which he was sentenced to concurrent terms of 14 to 60 months' imprisonment. He does not challenge these convictions on appeal.

The detective testified that defendant subsequently entered the room, went into the "back area" of the house, and then returned with what appeared to be a bag of methamphetamine. Defendant threw the bag on a digital scale that was located on the kitchen counter and stated, " 'There it is[.]' " The detective testified that the bag weighed "40-something grams[.]" Miller then stated, " 'That's too much[,]' " to which defendant replied, " 'Well, you do it then.' " With defendant standing right next to her, Miller subsequently weighed the correct amount and then handed the detective the bag in exchange for money. The detective agreed that he did not give the money to defendant. The Michigan State Police Crime Lab's report indicated that the bag contained 27.64 grams of methamphetamine.

The detective subsequently obtained a narcotics search warrant for the residence and all vehicles at the residence. The warrant was executed on December 8, 2021. When the warrant was executed, defendant was the only person present at the home. Pursuant to the warrant, handguns were located in a kitchen drawer, in a tool bag in the kitchen, and in defendant's Ford Ranger behind a quarter panel to the left of the steering column. The search also revealed narcotics in the kitchen drawer. The narcotics were secured in two containers and accompanied by a digital scale. The first container was a plastic bag tied off with a knot, which is a typical way of packaging narcotics, and the second container was a black, zipped case. Located inside the case were two smaller but similarly packaged bags of narcotics along with other drug paraphernalia. The Michigan State Police Crime Lab's reports indicated that the bags contained 27.04 grams, 3.57 grams, and 1.04 grams of methamphetamine.

Defendant consented to an interview with investigators while the search warrant was being executed. He stated that there was methamphetamine in the kitchen drawer next to the refrigerator, that he had placed it there when the police were executing the search warrant, and that he was supposed to sell the methamphetamine that he put in that drawer to someone later that night. Defendant was subsequently charged, convicted, and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

Defendant argues that the prosecution failed to present sufficient evidence to sustain his convictions of delivery of methamphetamine and possession with intent to deliver methamphetamine.[2] We disagree.

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). The Due Process Clauses of both the United States Constitution and the Michigan Constitution guarantee a criminal defendant's due-process rights. US Const, Ams V and XIV; Const 1963, art 1, § 17. We review challenges to the sufficiency of the evidence de novo "to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt." *People v Mitchell*, 301 Mich App 282, 289; 835 NW2d 615 (2013). "On appellate review, we accept as true the evidence contradicting defendant's version of the crime, as we must consider the evidence in a light most favorable to the prosecution . . . and view every

---

[2] Defendant has not challenged his three convictions of felon in possession of a firearm.

reasonable inference in favor of the jury verdict." *People v Oros*, 502 Mich 229, 246; 917 NW2d 559 (2018). "When reviewing the sufficiency of the evidence, appellate courts must not interfere with the fact-finder's role of deciding credibility." *People v Xun Wang*, 505 Mich 239, 258; 952 NW2d 334 (2020). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Oros*, 502 Mich at 239 (quotation marks and citation omitted).

The jury convicted defendant of violations of MCL 333.7401, which states, in relevant part:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.
>
> (2) A person who violates this section as to:
>
> \* \* \*
>
> (b) Either of the following:
>
> (*i*) A substance described in . . . [MCL 333.7214(c)(*ii*)] is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

Methamphetamine is classified as a schedule 2 controlled substance under MCL 333.7214(c)(*ii*).

To establish the offense of delivery of methamphetamine in violation of MCL 333.7401, the prosecution must prove that (1) defendant delivered a controlled substance, (2) the substance delivered was methamphetamine, and (3) defendant knew she was delivering methamphetamine. See *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012). In this case, the prosecution brought this charge under an aiding-and-abetting theory. "To aid and abet the commission of a crime, the crime itself must be proved, and the defendant must have rendered some kind of assistance or encouragement to the commission of that crime with the intent that the crime occur or the knowledge that the principal intended for the crime to occur." *People v Blevins*, 314 Mich App 339, 358; 886 NW2d 456 (2016). Additionally, establishing possession with intent to deliver methamphetamine in violation of MCL 333.7401 requires the prosecution to prove that (1) defendant possessed methamphetamine (2) with the intent to deliver. See *Wolfe*, 440 Mich at 516-517, 520, 524. Defendant does not contest that the controlled substance involved in this matter was methamphetamine, nor does he challenge the amount of the substance recovered pursuant to the search warrant. Rather, he asserts that he did not agree with co-defendant Miller's intent to sell narcotics. He claims he did not possess the same intent as Miller, nor did he knowingly participate in the illicit drug sale. He further avers that he did not possess methamphetamine at the time the search warrant was executed. Instead, defendant claims that there were others known to frequent the residence (presumably those who possessed the illicit drugs and weapons). He

states on appeal that he "happened to be the only [person] present when the warrant was executed[,]" which resulted in the police discovering contraband in the home and in his vehicle.

MCL 333.7105(1) defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." "[T]ransfer is the element which distinguishes delivery from possession." *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001) (alteration in *Schultz*; quotation marks, citation, and emphasis omitted). Although not defined by the Legislature, dictionary definitions of "transfer" as a verb include "to convey from one person, place, or situation to another," and as a noun include "conveyance of right, title, or interest in real or personal property from one person to another." *Merriam-Webster's Collegiate Dictionary* (11th ed). Either usage "seem[s] to broadly contemplate any conveyance of something from one person to another." *Schultz*, 246 Mich App at 703.

As to defendant's conviction of delivery of methamphetamine, ample evidence was presented from which the jury could conclude that, at minimum, defendant aided and abetted the delivery. Michigan's aiding-and-abetting statute, MCL 767.39, states:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Aiding and abetting encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). To prove that a defendant aided and abetted the commission of a crime, the prosecutor must establish the following elements:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Gash*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 365693), slip op at 4-5, quoting *People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999).]

In the context of delivery of a controlled substance, a defendant who assists with the delivery "necessarily aids and abets the deliverer's commission of the crime because such assistance aids and abets the delivery." *People v Plunkett*, 485 Mich 50, 62; 780 NW2d 280 (2010) (emphasis omitted).

Defendant's claim that the prosecution failed to prove that he knew and agreed with Miller's intent to sell narcotics to the detective lacks merit. "[A]ctual delivery of narcotics is not required to prove intent to deliver." *Wolfe*, 440 Mich at 524. Instead, intent to deliver can be "inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*. The detective testified that the suspected methamphetamine that defendant placed on the kitchen counter was in

a plastic baggie that was tied shut with a knot. The detective further stated that this type of packaging was typical for narcotics trafficking. The detective testified that he suspected that the bag that defendant had in his possession was filled with methamphetamine because of the way it was packaged and because of its weight. Defendant's statements during the transaction also circumstantially support a finding that he shared Miller's intent to deliver. Defendant stated, " 'There it is[,]' " threw the baggie on a scale, and then discussed the weight of the baggie with Miller. Defendant remained in the kitchen during the entire transaction, and was present when the detective gave Miller money for the drugs. All of these facts indicate that defendant knew he was supplying the narcotics to Miller for a particular purpose—namely, the sale of drugs to a buyer. Thus, sufficient evidence was presented to allow the jury to find beyond a reasonable doubt that defendant knew of and shared Miller's intent to deliver methamphetamine to the detective, and that, at minimum, defendant aided and abetted in the delivery.

We additionally conclude that sufficient evidence was presented to allow a jury to find defendant guilty of possession with intent to deliver methamphetamine. Defendant claims that the evidence was insufficient because other people, including Miller, were known to frequent the residence. He also points out that he was not in physical possession of the methamphetamine when the search warrant was executed, and that his DNA or fingerprints were not found on the drugs. Further, he claims that his mere presence in the house was little more than happenstance.

Michigan courts have recognized that possession can be "actual or constructive" and that the defendant need not be "the owner of recovered narcotics" in order to be convicted of a drug-related crime. *Wolfe*, 440 Mich at 520. However, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id.* To establish constructive possession, there must be proximity to the contraband together with "indicia of control." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (quotation marks and citation omitted). Put differently, "constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Wolfe*, 440 Mich at 521. A defendant's "[i]ntent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*. at 524.

As noted, defendant was in the home when the search warrant was executed, and the methamphetamine that was seized was packaged in clear plastic bags that were tied off with a knot, consistent with a typical way of packaging narcotics for trafficking. Additionally, during an interview with one of the officers executing the search warrant, defendant stated that "there was methamphetamine inside the residence," that "it was in the kitchen drawer next to the refrigerator," and that "he placed it in the drawer when the police were there executing the search warrant." Defendant stated that he put the drugs in the drawer because he planned to sell the drugs to someone later that night. Accordingly, sufficient evidence was presented for a rational jury to conclude that defendant possessed methamphetamine with the intent to deliver. He is therefore not entitled to relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood