# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM HENRY HAYNES,

        Defendant-Appellant.

UNPUBLISHED
June 21, 2016

No. 326336
Oakland Circuit Court
LC No. 2014-250774-FH

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82, and domestic violence, MCL 750.81(2). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 2½ to 15 years' imprisonment for his felonious assault conviction and to 75 days (time served) for his domestic violence conviction. We affirm.

## I. FACTUAL BACKGROUND

In the early morning hours of May 10, 2014, defendant picked up his girlfriend, Ameisha Sturdivant, from her home in Pontiac, Michigan. He was driving his gold Chevrolet SUV or "truck." They were driving to get something to eat, and on the way an argument ensued. As the argument escalated, Sturdivant decided to leave defendant's vehicle at the intersection of Martin Luther King Jr. Boulevard and University Avenue. She then began to walk along a nearby sidewalk.

Ronald Bouldin, a bystander, watched an SUV drive onto the sidewalk behind a woman, who had a physical appearance consistent with Sturdivant's, and continue to drive towards her without slowing down. He then saw the woman fall as the vehicle drove past her. Subsequently, the truck drove away and parked in the lot of a nearby Rite Aid.

Meanwhile, Sturdivant got up from the ground and ran into the middle of the intersection. Gary Coffman, another bystander, thought he heard gunshots and subsequently watched a woman, who fit Sturdivant's physical description, bang on the window of a car in the intersection while yelling, "Help me, help me, he's going to kill me," or something similar. Coffman called 911 seeking assistance for the woman. Both bystanders then saw a man walk into the intersection, grab the woman, and take her back to his SUV. The SUV then moved to a nearby parking lot.

-1-

Deputy Richard Knodel of the Oakland County Sheriff's Department responded to the 911 call and found defendant and Sturdivant in a gold SUV that matched Coffman's description. Knodel arrested defendant at the scene. Deputy Knodel observed that Sturdivant had a large gash on her arm, was not wearing a shirt, and was extremely upset. When he asked her what had happened, Sturdivant told him that defendant had just hit her with his vehicle. Deputy Knodel later noticed blood on the driver's side door, a crack in the grill, and a dent on the hood of defendant's SUV.

Later that day, Sturdivant gave two written statements that defendant had struck her with his vehicle. At trial, however, she claimed that she tripped and fell as she exited the SUV while they were arguing. She testified that after she fell, she "blanked out" and did not see where defendant went. She acknowledged that she knocked on the window of another car in the intersection and asked the driver to take her home, but the driver refused. She also remembered that defendant put his arm around her and walked her back to his vehicle, even though she did not want to return with him, and that he helped her into the back seat "like you would help anyone that's hurt." "[B]lood was squirting everywhere," so she took off her shirt and used it to bandage her arm.

## II. BINDOVER

Defendant first argues that the prosecution presented insufficient evidence at the preliminary examination to bind him over for trial on his felonious assault and domestic violence charges. We disagree.

## A. STANDARD OF REVIEW

Because defendant failed to preserve this issue by filing a motion to quash, it is reviewed for plain error affecting substantial rights. *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To demonstrate such an error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

## B. ANALYSIS

Although preliminary examinations are not required under the United States Constitution or the Michigan Constitution, a magistrate must, pursuant to MCL 766.13, bind a defendant over for trial when the prosecutor presents evidence demonstrating that there is probable cause to believe that a felony has been committed and that the defendant committed it. *People v Plunkett*, 485 Mich 50, 56-57; 780 NW2d 280 (2010). Probable cause exists when there is "a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. at 57. An error in binding a defendant

over for trial will be deemed harmless if the prosecution presents sufficient evidence to support his convictions at trial. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002).

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted).

> The courts have defined a battery as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. It does not matter whether the touching caused an injury. Further, the courts have defined an assault as an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. [*People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (quotation marks and citations omitted).]

A vehicle may be considered a dangerous weapon in the context of felonious assault. *People v Wardlaw*, 190 Mich App 318, 319-320; 475 NW2d 387 (1991); *People v Sheets*, 138 Mich App 794, 799; 360 NW2d 301 (1984).

At the preliminary examination, the court heard testimony from Bouldin, Coffman, and Deputy Knodel. Bouldin testified that he saw a car at the intersection of Martin Luther King Jr. Boulevard and University Avenue as he was walking home from work. He then saw a woman get out of the car and walk onto the sidewalk. He watched the driver reverse his vehicle and drive up onto the sidewalk where the woman was walking. The woman then fell on the ground and rolled over. While Bouldin was unable to directly observe, from his vantage point, whether the vehicle struck the woman, it is reasonable to infer that the woman fell because she was hit by the vehicle given that the vehicle had been driving towards her. See *Greene*, 255 Mich App at 444. Bouldin then watched the vehicle drive into a Rite Aid parking lot. He testified that the driver returned to the intersection and walked the woman to the Rite Aid, where he examined his car for damage.

Coffman testified that he looked through a fence in his backyard to see what was going on after he heard two gunshots. He saw a woman banging on the window of a car and screaming, "Help me, help me, he's trying to kill me!"

Deputy Knodel testified that he received a call regarding gunshots fired near Martin Luther King Jr. Boulevard and University Avenue and that he subsequently encountered an SUV matching the description of the suspect's vehicle in a nearby parking lot. When he approached the vehicle, he discovered defendant and Sturdivant inside. After placing defendant under arrest, Deputy Knodel questioned Sturdivant. He testified that Sturdivant was very upset and told him

that defendant had just run her over with his car.[1] Deputy Knodel also observed that Sturdivant had a large gash on her arm. His inspection of the vehicle revealed a crack in the grill, a dent in the hood, and blood on the side of the car.

Contrary to defendant's claim that there "was no evidence [that he] committed an assault with his vehicle," the prosecution presented overwhelming direct and circumstantial evidence that he assaulted Sturdivant with his SUV. Additionally, the witnesses' similar descriptions of the vehicle, Officer Knodel's discovery of both defendant and Sturdivant a gold, four-door SUV, which was consistent with the witnesses' description, and Sturdivant's statement to the police that defendant hit her with his vehicle provided significant direct and circumstantial evidence from which one could reasonably infer that defendant committed the crimes. See *Greene*, 255 Mich App at 444. Thus, the trial court did not err when it found probable cause to bind defendant over for trial on the felonious assault charge.

Defendant was also charged with one count of misdemeanor domestic violence. He argues that the district court violated MCR 6.110(E) when it failed to make a probable cause finding on the domestic violence charge, asserting that this court rule requires a district court to make a probable cause finding on offenses cognizable by the district court as well as offenses not cognizable by the district court. We reject defendant's reading of the court rule because it does not establish a right to a preliminary examination on a domestic violence charge.

The Michigan Supreme Court has recognized that "the Legislature has mandated preliminary examinations for felony charges." *Plunkett*, 485 Mich at 56, citing MCL 766.4. Likewise, there is no right to a preliminary examination for an offense that is punishable by imprisonment of less than one year because such an offense may be tried in the district court.[2] Domestic violence, which is punishable by fine or imprisonment of not more than 93 days, MCL 759.81(1), is such an offense. Following the district court's finding of probable cause for the felonious assault charge, the circuit court had jurisdiction over the misdemeanor domestic violence charge because it arose out of the same transaction as the felonious assault charge. *People v Veling*, 443 Mich 23, 33; 504 NW2d 456 (1993). Accordingly, defendant has failed to establish that the district court erred when it failed to make a probable cause finding on the domestic violence charge. Even if the district court did err, this error was harmless because, as discussed below, the prosecution presented sufficient evidence at trial to support defendant's domestic violence conviction. See *Libbett*, 251 Mich App at 357.

Defendant also argues that defense counsel was ineffective for failing to file a motion to quash. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous

---

[1] For the same reasons discussed later in this opinion, we reject defendant's claim that Sturdivant's statement to Deputy Knodel was erroneously admitted as an excited utterance under MRE 803(2).

[2] See MCL 766.4; MCL 766.13; MCL 767.42(1); MCL 600.8311. See also *People v Smalls*, 139 Mich App 759, 765; 362 NW2d 805 (1984); *People v Reno*, 85 Mich App 586, 589; 272 NW2d 144 (1978).

or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). Nevertheless, even if we assume, arguendo, that defense counsel's alleged error fell below an objective standard of reasonableness, defendant is unable to establish the requisite prejudice. See *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). As explained *infra*, the prosecution presented overwhelming evidence of defendant's guilt at trial. Thus, any bindover error was harmless because sufficient evidence was presented to support his convictions at trial. *Libbett*, 251 Mich App at 357.

## III. EXCITED UTTERANCES

Defendant next argues that both the district court and trial court erred when they admitted Sturdivant's out-of-court statements as excited utterances. We disagree.

### A. STANDARD OF REVIEW

"The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

### B. ANALYSIS

MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pursuant to MRE 802, hearsay is not admissible unless it falls under one of the exceptions to the hearsay rule provided by the Michigan Rules of Evidence. Two requirements must be met for an out-of-court statement to qualify under the excited utterance exception to the hearsay rule pursuant to MRE 803(2): (1) a startling event occurred, and (2) the resulting statement was made while the declarant was under the stress of excitement instigated by the event. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). The focus of the second requirement is on the declarant's lack of capacity to fabricate, not the lack of time to fabricate. *Id*. at 551.

Defendant argues against the trial court's admission of Coffman's statement that he heard a woman yell, "Help me, help me, somebody's going to kill me!" or, "He's going to kill me!" Defendant contends that there is no evidence that the woman's statement was made in response to a startling event. However, a court may consider a hearsay statement itself in conjunction with other independent evidence in order to determine that a startling event or condition occurred. *People v Barrett*, 480 Mich 125, 127-128; 747 NW2d 797 (2008). Here, Coffman testified that he heard two loud "bangs" and then saw a woman run from a vacant lot to a car that was waiting at a nearby intersection. The woman was "screaming" and hitting the window of the car when she yelled, "Help me, help me, somebody's going to kill me," or, "He's going to kill me." Coffman testified that the woman "looked pretty scared to [him]" as she was screaming and hitting the window. Additionally, at trial, Bouldin testified that he saw the driver of a vehicle drive up on the sidewalk adjacent to a parking lot at the same intersection described by Coffman. He watched the vehicle move towards the woman "at a pretty good speed," without

slowing down, and saw the woman begin to run and then fall as the vehicle drove past her. Sturdivant's prior written statements, which were admitted as evidence at trial, stated that defendant drove his vehicle over the curb and subsequently hit her with the vehicle. Deputy Knodel testified that he observed blood on defendant's SUV as well as a crack in the grill and a dent on the hood of the vehicle. This evidence provides overwhelming support that defendant drove towards Sturdivant and hit her with his vehicle minutes before Coffman and Deputy Knodel heard Sturdivant's statements, thereby fulfilling the requirement of a startling event.

Under the second prong, Coffman testified that the woman "looked pretty scared to [him]" as she ran from the vacant lot screaming and hit the window of a car. This provided significant circumstantial evidence that the woman made the statement before she had an opportunity to fabricate the statement. Additionally, Deputy Knodel testified that Sturdivant was visibly shaken and crying when he encountered her. He also stated that Sturdivant had a large gash on her arm, which indicates relevant factors of pain and shock. See *Smith*, 456 Mich at 552. Accordingly, the trial court did not abuse its discretion in concluding that Sturdivant's statements were made while she was still under the stress of a startling event and, therefore, admitting them as excited utterances.

Next, defendant contends that Sturdivant's statement to Deputy Knodel was improperly admitted as an excited utterance because it was made in response to police questioning. However, in *Smith*, the Court stated that a statement made in response to questioning is not automatically precluded from admission as an excited utterance. *Id*. at 553. Rather, "whether a statement made in response to questioning should be excluded under MRE 803(2) depends on the circumstances of the questioning and whether it appears that the statement was the result of reflective thought." *Id*. As such, a statement may be excluded if it is the result of suggestive and persistent or insistent questioning. *Id*. Deputy Knodel's questions cannot be characterized as such. He testified that, when he first spoke with her, Sturdivant stared at the gash on her arm and exhibited difficulty speaking when she was asked if she was "okay." Then, after the police called an ambulance to assist Sturdivant, as she was visibly injured, Deputy Knodel merely asked her what had happened. It is apparent that Sturdivant's response to this question was not the result of reflective thought, as she provided an immediate response and she still was visibly upset, crying and stuttering as she spoke. Contrary to defendant's claims, there is no indication in the record that Deputy Knodel's questioning about the incident was impermissibly suggestive or persistent, that Sturdivant's response was the product of reflective thought, or that it was instigated by stress specifically caused by Deputy Knodel's questions and the actions of the police. Therefore, Sturdivant's statement to Knodel was properly admitted as an excited utterance despite the fact that it was made in response to questioning. See *People v McLaughlin*, 258 Mich App 635, 660; 672 NW2d 860 (2003) (holding that a victim's statement to a police officer was admissible under the excited utterance exception under similar circumstances).

IV. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that the prosecution presented insufficient evidence at trial to support his convictions. We disagree.

A. STANDARD OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence *de novo*. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising [from the evidence] may constitute proof of the elements of [a] crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). This Court's review is deferential, as "[w]hen assessing a challenge to the sufficiency of evidence, the trier of fact, not the appellate court, determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010), overruled in part on other grounds by *People v Jackson*, 498 Mich 246, 268 n 9 (2015). Accordingly, in reviewing a challenge to the sufficiency of the evidence, we do not interfere with the fact-finder's determinations regarding the weight and credibility of the witnesses or the evidence. *Dunigan*, 299 Mich App at 582.

## B. ANALYSIS

As discussed above, "[t]he elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *Chambers*, 277 Mich App at 8 (quotation marks and citation omitted). Again, this Court has recognized that a vehicle may constitute a dangerous weapon in the context of a felonious assault. *Wardlaw*, 190 Mich App at 319-320; *Sheets*, 138 Mich App at 799.

At trial, Bouldin testified that he saw a woman exit a vehicle and walk onto the sidewalk. He then saw the driver of the vehicle drive onto the sidewalk towards the woman and saw the woman fall onto the pavement. Coffman testified at trial that he heard a woman yell that "someone" or "he" was going to kill her as she ran from a vacant lot and hit the window of a car in the intersection. Notably, Bouldin and Coffman observed these events from different locations in the vicinity of the same intersection. When Deputy Knodel responded to Coffman's 911 call, discovered defendant and Sturdivant in a vehicle matching the witnesses' description, and questioned Sturdivant about what had happened, Sturdivant told Deputy Knodel that defendant had struck her with his vehicle. Sturdivant also repeated this assertion in two written statements provided on the day of the incident. When he examined defendant's vehicle, Deputy Knodel noticed blood on the driver's side door, a crack in the grill, and a dent in the hood.

This testimony was more than sufficient to demonstrate that defendant used a vehicle, *i.e.*, a dangerous weapon, in an attempt to accomplish an unconsented and harmful touching or, at a minimum, to place Sturdivant in reasonable apprehension that she would be struck by the vehicle. See *Cameron*, 291 Mich App at 614 (defining battery and assault); *Wardlaw*, 190 Mich App at 319-320 (concluding that the evidence was sufficient to uphold the defendant's felonious assault conviction under strikingly similar facts). Although Sturdivant testified at trial that she "blanked out" after she tripped and did not remember defendant aiming for her or hitting her with his vehicle, this testimony is contradicted by her out-of-court statements, which were admitted as evidence at trial. Any conflicts in the evidence must be resolved in favor of the prosecution. *Dunigan*, 299 Mich App at 582. Thus, viewing the evidence in the light most

favorable to the prosecution, there was sufficient evidence to support defendant's felonious assault conviction. See *id*.

Under the circumstances of this case, the relevant elements of domestic violence are "(1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties." *Cameron*, 291 Mich App at 614. Defendant does not dispute that he and Sturdivant were in a dating relationship at the time of the incident. Rather, defendant contends that his act of escorting Sturdivant back to his vehicle did not constitute an assault or an assault and battery. However, the testimony of Coffman and Bouldin, which described events that occurred at the same location and time, establishes that defendant did, in fact, commit an assault and battery against Sturdivant. Bouldin testified that he watched the driver of a four-door truck pull his vehicle into the parking lot of the Rite Aid, exit the vehicle, walk towards the woman, grab her upper arm, and walk her back to the truck. During his testimony, Coffman stated that "the person grabbed her, all right, and when they grabbed her they grabbed her back and tried to drag her back this way towards this driveway right here." Further, Sturdivant said in her written statement that defendant "grabbed me by my hair and arm and put me into the back seat of his vehicle." A reasonable jury could easily conclude from this evidence that defendant performed an intentional, unconsented, and offensive—if not harmful—touching of Sturdivant. See *id*. at 614 (defining a battery).

At trial, Sturdivant testified that defendant merely walked with her to his vehicle and helped her get inside, but, again, this Court must resolve all conflicts in the evidence in favor of the prosecution. *Dunigan*, 299 Mich App at 582. Therefore, there was sufficient evidence to support defendant's domestic violence conviction.

## V. CONCLUSION

Defendant has failed to establish that any of the claims of error raised on appeal warrant relief.

Affirmed.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan