*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD VINCENT MCCOY,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2020

No. 343160
Macomb Circuit Court
LC No. 2017-001181-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LESLIE CECILIA METCALFE,

        Defendant-Appellant.

No. 343597
Macomb Circuit Court
LC No. 2017-001182-FC

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

Following a joint trial, a single jury convicted codefendants Donald McCoy and Leslie Metcalfe of delivery of a controlled substance causing death, MCL 750.317a, and delivery of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*). McCoy challenges the constitutionality of MCL 750.317a, Metcalfe contends that the prosecutor presented insufficient evidence to support her convictions, and both challenge their sentences. We discern no error and affirm.

## I. BACKGROUND

Defendants' convictions arise from the delivery of heroin to 20-year-old Wayne Williams and 16-year-old SL, and the death of SL, at Metcalfe's home on January 7, 2017. Metcalfe was a

-1-

friend of SL's family. On the day in question, Metcalfe and SL exchanged text messages about being "depressed" and "down" and wanting to use drugs. SL asked Metcalfe if she could secure heroin. The pair talked money and Metcalfe agreed to contact her neighbor, McCoy, who could find heroin. SL and her boyfriend, Williams, walked to Metcalfe's home where they met McCoy and provided funds for heroin. McCoy purchased the drugs on their behalf. Thereafter, Williams "snorted" heroin and overdosed, but survived. SL died after ingesting the drug. The cause of death was drug abuse from a combination of heroin and fentanyl.

Metcalfe did not contact 911 when she realized that SL and Williams were in distress. Instead, she called another neighbor for assistance, hid in the home of SL's father, and lied to both of SL's parents about SL's condition. The neighbor who had been summoned contacted 911 and SL was pronounced dead at the scene. Even when tracked down, Metcalfe lied and claimed that SL had only taken Xanax that she secured earlier in the day. She deleted her messages with SL and McCoy about the heroin transaction. Only when confronted with direct evidence did Metcalfe concede that McCoy purchased heroin for SL and Williams. At trial, McCoy argued that he did not intend to harm anyone. Metcalfe argued that she was not culpable because SL was a drug user who wanted to procure drugs to share, and she did not assist McCoy in delivering the heroin.

## II. MCL 750.317A IS A GENERAL INTENT CRIME

McCoy first contends that delivery of a controlled substance causing death in violation of MCL 750.317a is a strict-liability crime carrying the same penalty as second-degree murder and as such, his conviction violated his right to due process of law. McCoy failed to raise this issue below and our review is limited to plain error affecting McCoy's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCL 750.317a proscribes delivery of a controlled substance causing death as follows:

> A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of . . . MCL 333.7401, that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

The statute "punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death." *People v Plunkett*, 485 Mich 50, 60; 780 NW2d 280 (2010). See also *People v McBurrows*, 504 Mich 308, 317; ___ NW2d ___ (2019).

The question is the level of intent required to commit this offense. This is important as "[s]tatutes creating strict liability regarding all their elements are not favored." *People v Quinn*, 440 Mich 178, 187; 487 NW2d 194 (1992). "Criminal intent can be one of two types: the intent to do the illegal act alone (general criminal intent) or an act done with some intent beyond the doing of the act itself (specific criminal intent)." *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013). Stated differently, "the distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter

involve merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983). "[A] strict-liability offense is one in which the prosecution need only prove beyond a reasonable doubt that the defendant committed the prohibited act, regardless of the defendant's intent and regardless of what the defendant actually knew or did not know." *Janes*, 302 Mich App at 41-42 (cleaned up).[1]

In *Plunkett*, 485 Mich at 60, our Supreme Court held that MCL 750.317a is a general intent crime. The Court explained that the statute "does not require the intent that death occur from the controlled substance first delivered in violation of MCL 333.7401. Rather, the general intent required to violate MCL 750.317a is identical to the general intent required to violate MCL 333.7401(2)(a): the delivery of a schedule 1 or 2 controlled substance."[2] *Plunkett*, 485 Mich at 60. Thus, MCL 750.317a requires a criminal state of mind as it relates to the delivery of a controlled substance. "[W]here a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability." *Quinn*, 440 Mich at 187. Accordingly, McCoy's constitutional challenge lacks merit.

## III. SUFFICIENCY OF THE EVIDENCE

Metcalfe challenges the sufficiency of the evidence supporting her convictions. We review de novo a challenge to the sufficiency of the evidence, "viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We must "draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

> The elements of a prosecution under MCL 750.317a are: (1) delivery to another person, (2) of a schedule 1 or 2 controlled substance (excluding marijuana), (3) with intent to deliver a controlled substance as proscribed by MCL 333.7401, (4) consumption of the controlled substance by a person, and (5) death that results from the consumption of the controlled substance. [*McBurrows*, ___ Mich at ___, slip op at 9.]

"The elements of delivery of less than 50 grams of heroin are (1) a defendant's delivery (2) of less than 50 grams (3) of heroin or a mixture containing heroin (4) with knowledge that he or she was delivering heroin." *People v Dickinson*, 321 Mich App 1, 12; 909 NW2d 24 (2017).

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

[2] MCL 333.7401(2)(a) provides that a person shall not manufacture or deliver a schedule 1 or 2 controlled substance. Heroin is designated as a schedule 1 controlled substance. MCL 333.7212(1)(b).

Metcalfe concedes that McCoy delivered heroin to SL and Williams and that SL died as a result. However, she contends that she did not participate in the delivery and therefore cannot be held criminally liable as an aider and abettor. A person who aids or abets the commission of a crime may be convicted and punished as if she directly committed the offense. MCL 767.39.

> To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant [either] intended the commission of the crime or had knowledge that the principal intended its commission at the time [s]he gave aid and encouragement. [*People v Izarraras-Placante*, 246 Mich App 490, 496-497; 633 NW2d 18 (2001) (cleaned up).]

Alternatively, the prosecution must prove "that the charged offense was a natural and probable consequence of the commission of the intended offense." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." *Carines*, 460 Mich at 757 (cleaned up). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). "An aider or abettor's state of mind may be inferred from all the facts and circumstances," including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich at 757 (cleaned up).

Aiding or abetting in the context of the offenses of delivery of heroin causing death and delivery of less than 50 grams of heroin was addressed by our Supreme Court in *Plunkett*, 485 Mich 50. In that case, the defendant drove Tracy Corson from Ann Arbor to Detroit to engage in a drug transaction. *Id*. at 53. The defendant gave Corson the money to purchase their drugs, and Corson completed the transaction with the dealer. *Id*. The defendant then drove back to his Ann Arbor apartment where he "partied" with his ex-girlfriend and Corson. *Id*. Later that night, the victim, who was Corson's friend, came to the defendant's apartment seeking drugs. *Id*. The four smoked crack cocaine together, and then Corson and the victim went in the bathroom to inject heroin. *Id*. Shortly thereafter, the victim died of a heroin overdose. *Id*. at 53-54. The district court found probable cause to bindover the defendant on an aiding and abetting theory. *Id*. at 54. Our Supreme Court affirmed that decision, explaining that the appropriate inquiry is not whether the "defendant aided and abetted *the drug dealer*" in the transaction. *Id*. at 65. "Instead, the crux of the appropriate inquiry is whether [the] defendant aided and abetted *the delivery itself* by assisting any party to that transaction. Such assistance to any party to an illegal transaction necessarily encourages, supports, or incites the commission of that crime." *Id*. (cleaned up).

Like the defendant in *Plunkett*, Metcalfe performed acts that assisted in the delivery of a controlled substance. First, it is undisputed that McCoy directly purchased heroin, or a mixture containing heroin, from a third party and delivered it, and that SL died after consuming the drugs.

Second, viewed in the light most favorable to the prosecution, the evidence established that Metcalfe assisted McCoy in the commission of the crimes by laying the groundwork for him

to deliver the heroin. Following a discussion about a desire for heroin, SL told Metcalfe that she had money, Metcalfe confirmed with SL that she had enough to purchase heroin, and Metcalfe contacted McCoy (a stranger to SL) for him to purchase the heroin. Metcalfe then directed McCoy and SL to visit her trailer to discuss logistics and exchange money. After purchasing the heroin, McCoy returned to Metcalfe's trailer and delivered the heroin. Metcalfe facilitated this drug transaction. Had she not done so, McCoy would not have purchased and delivered this heroin.

Third, based on the timeline of events and Metcalfe's statement to SL that she knew McCoy could "get that [amount of heroin] delivered," the jury could conclude beyond a reasonable doubt that Metcalfe intended for McCoy to deliver heroin or had knowledge that McCoy would deliver heroin at the time she gave aid and encouragement. Accordingly, the prosecution presented sufficient evidence to support Metcalfe's convictions under an aiding or abetting theory.

## IV. SENTENCING

### A. MCCOY'S SENTENCE WAS PROPORTIONATE

McCoy contends that his 15-year (180-month) minimum sentence for delivery of a controlled substance causing death is disproportionate and unreasonable. McCoy's sentence falls at the low end of the advisory minimum sentencing guidelines range of 135 to 450 months. As the sentence is within the appropriate range, McCoy's proportionality and reasonableness challenges are misplaced. We are "required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). If a trial court chooses a within-guidelines sentence, we "need not evaluate [the] sentence for reasonableness and must affirm unless there was an error in the scoring or the trial court relied on inaccurate information." *Id*. at 636, citing MCL 769.34(10). McCoy does not raise any scoring challenges or contend that the trial court relied on inaccurate information. Rather, he contends that his sentence is disproportionate because of "unusual" circumstances, specifically that his prior convictions all stemmed from his ongoing drug addiction, he made efforts to rehabilitate, and he did not intend to harm anyone. The trial court was well aware of these circumstances, potentially impacting its decision to impose a sentence at the low end of the guidelines. But these factors do not warrant appellate relief.

### B. METCALFE'S GUIDELINES WERE CORRECTLY SCORED

Finally, Metcalfe contends that the trial court erred in scoring offense variables (OV) 10 and 14 of the sentencing guidelines. She preserved her challenge to the scoring of OV 14 by raising a contemporaneous objection. We review the trial court's "factual determinations . . . for clear error and [they] must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Our review of Metcalfe's challenge to OV 10, however, is limited to plain error as she failed to object below. *Anderson*, 322 Mich App at 634.

OV 14 addresses the role of the offender, and the trial court must assess 10 points if "[t]he offender was a leader in a multiple offender situation[.]" MCL 777.44(1)(a). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). If two offenders were involved, only one may be considered the leader. *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). "To lead is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (cleaned up). "[F]or purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id.* (cleaned up).

"When calculating scores under the sentencing guidelines, a trial court may consider all the evidence in the trial court record." *Id.* at 21. Here, the record facts support the court's scoring decision. The evidence substantiates that Metcalfe directed the drug transaction by making the arrangements on SL's behalf and calling McCoy to solicit his purchase of the drugs. SL did not know McCoy and without Metcalfe's involvement, McCoy would not have purchased drugs on SL's and Williams's behalf.

Moreover, Metcalfe is not entitled to relief for the assessment of 10 points for OV 10. OV 10 addresses exploitation of a vulnerable victim, and the trial court must assess 10 points if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "Vulnerability" is defined by MCL 777.40(2)(c) as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).

Metcalfe's score may be supported by her failure to summon help for Williams and SL when they had clearly overdosed. Proper or not, however, the reduction of these 10 points from Metcalfe's overall OV score would not warrant relief. Metcalfe's total OV score of 95 points placed her in OV Level V (80 to 99 points). MCL 777.62. The reduction of these 10 points would not affect her OV level. Because no potential scoring error affected Metcalfe's sentencing guidelines range, she is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle