*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee/Cross-Appellant,

v

JMAUN DAMIAN MCCOY,

Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
February 24, 2025
11:18 AM

No. 366427
Wayne Circuit Court
LC No. 20-000273-01-FC

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529; third-degree fleeing and eluding a police officer, MCL 750.479a(3); carrying a concealed weapon (CCW), MCL 750.227; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and three counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 20 to 40 years' imprisonment for armed robbery, two to five years' imprisonment for third-degree fleeing and eluding, one to five years' imprisonment for CCW, and one to five years' imprisonment for felon-in-possession, all to be served consecutively to a term of five years' imprisonment for the counts of felony-firearm. Defendant now appeals by right, arguing that he was denied the effective assistance of counsel during the plea-bargaining stage of his case. In a cross-appeal, the prosecution also appeals by right, arguing that the trial court erroneously rescored offense variable (OV) 10 at zero points following defendant's postjudgment motion to correct his invalid sentence. Discerning no errors warranting relief, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an armed robbery that occurred in Dearborn Heights at approximately 11:00 p.m. on December 18, 2019. According to the testimony of the victim and

-1-

defendant's friend,[1] defendant, who was driving himself and his friend that evening, stopped his car within feet of where the victim was standing in the street. Defendant's friend then jumped out of the passenger side of the car with a gun in his hand, pointed it at the victim, and attempted to rob the victim at gunpoint. The victim fought back and an altercation ensued, during which the victim slipped and fell to the ground. Defendant's friend then kicked the victim multiple times, struck him in the head with the gun, and searched his pockets. The victim managed to trigger a car alarm with his key fob, which prompted defendant's friend to run back to defendant's car, jump in, and close the door. Defendant, who had remained in the car during the robbery, then gave his friend a "thumbs up," made a U-turn, and sped away. Shortly thereafter, officers observed defendant speeding down the road and attempted to effectuate a traffic stop. Within seconds, defendant crashed his car, and he and his friend fled on foot into the yards of nearby residences. Officers subsequently apprehended and arrested both men.

The prosecution charged defendant as an aider and abettor to armed robbery. At trial, defendant's friend testified that he and defendant "didn't have a plan" to rob anybody before the robbery occurred. Defendant's friend clarified that it was only his "intent . . . to try to rob" the victim, explaining that he never told defendant why they were stopping the car. Rather, he had made a "spur of the moment" decision to rob the victim as defendant drove past him, and defendant only stopped the car after his friend "turned the radio down a little bit," pointed at a house on the corner of the street, and told defendant to "stop right here at the corner house." The prosecution admitted several videos as evidence, including security-camera footage of defendant's car approaching the victim on the street and subsequently fleeing after a brief period of time, dash-cam footage of the officers' pursuit of defendant's car and its subsequent crash, and security-camera footage of defendant hiding in an individual's yard after he fled on foot. The prosecution also admitted as evidence a compilation of defendant's partially redacted phone and video calls while in jail, all of which were made within three weeks of his arrest and contained his repeated discussion of the robbery.

During pretrial proceedings, the prosecution made two plea offers to defendant. The terms of the first offer required defendant to plead guilty to armed robbery and felony-firearm (second offense) in exchange for dismissal of all other charges and a sentence agreement of 7 to 20 years for armed robbery consecutive to five years for felony-firearm. Defendant ultimately rejected the offer and indicated that he wished to proceed to trial. The terms of the second offer required defendant to plead guilty to armed robbery and felony-firearm (second offense) in exchange for, in relevant part, dismissal of all other charges, withdrawal of the notice to enhance defendant's sentence based on his fourth-habitual status, and a sentence agreement of 3 to 20 years for armed robbery consecutive to five years for felony-firearm. Defendant again rejected the offer and stated that he wished to proceed to trial. Defendant thereafter proceeded to trial and was found guilty as charged.

---

[1] Defendant's friend was involved in the robbery and was initially charged as a codefendant in this case, but he pleaded guilty to armed robbery and felony-firearm in November 2020 as part of a plea deal and subsequently testified on behalf of the defense at defendant's trial in April 2022.

The trial court sentenced defendant as described. Relevant to this appeal, the trial court assessed 15 points for OV 10, to which defendant objected. After filing a claim of appeal in this Court, defendant filed a motion to correct his invalid sentence with the trial court, arguing that the trial court erred by assessing 15 rather than zero points for OV 10 because there was insufficient evidence to support a finding that he had engaged in predatory conduct. The prosecution filed a response in opposition. Following oral arguments on the matter, the trial court granted defendant's motion and ordered resentencing on the basis that it had erroneously assessed 15 rather than zero points for OV 10. The prosecution thereafter filed a motion to stay proceedings, which the trial court granted, and filed a claim of appeal in this Court.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel during the plea-bargaining stage of his case because defense counsel failed to completely and accurately explain to him the prosecution's aiding and abetting theory of armed robbery and failed to show him videos depicting his conduct after the robbery, including security footage of him hiding in a residential yard as police searched for him on foot. Because of counsel's failures, defendant argues, defendant did not understand that he could be convicted of aiding and abetting an armed robbery based solely on his conduct after the robbery. Defendant asserts that had he known that the jury could convict him of aiding and abetting the robbery based solely on his conduct after the robbery and had he seen the security footage, he would have accepted the prosecution's second plea offer. We disagree.

Whether counsel was ineffective presents a mixed question of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "[A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). To establish ineffective assistance of counsel in the context of a plea, a defendant must show (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that there is a reasonable probability that "the outcome of the plea process would have been different with competent advice." *People v White*, 331 Mich App 144, 148-149; 951 NW2d 106 (2020) (quotation marks, citations, and alteration omitted). To establish prejudice arising out of a defendant's decision to reject a plea offer and stand trial, the defendant must show that, had he or she been afforded effective assistance, there is a reasonable probability that (1) "the plea offer would have been presented to the court (*i.e.*, that [he or she] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) the trial court would have accepted the terms of the plea offer, and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact

---

[2] When defendant filed his brief on appeal with this Court, he also filed a motion to remand to the trial court for an evidentiary hearing and attached an affidavit from himself as an offer of proof. This Court denied defendant's motion "for failure to persuade the Court of the necessity of a remand at this time," but "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v McCoy*, unpublished order of the Court of Appeals, entered October 23, 2024 (Docket No. 366427).

were imposed." *Douglas*, 496 Mich at 592 (quotation marks and citation omitted). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022).

Defendant has failed to demonstrate that defense counsel performed deficiently at the plea-bargaining stage of this case. The record in this case reflects that counsel discussed the prosecution's plea offers with defendant at length, that the prosecution's aiding and abetting theory of armed robbery was front of mind during the pretrial stage of proceedings, and that counsel correctly understood the role and import of that theory in light of the evidence against defendant. Defense counsel filed a motion to quash the information very early on in this case, in which she argued that the evidence only established that defendant was "merely present" during the robbery—a position that, if believed, would render the evidence insufficient to establish that defendant was an aider and abettor. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Defense counsel maintained this position at trial, arguing that defendant was merely present during the robbery and only fled from the police because he knew that he was illegally in possession of a gun at the time of the car crash. Defendant claims that counsel should have, but failed to, explain to him that he could be convicted "solely" on the basis of his post-robbery conduct, but neither the record nor the law particularly supports that claim. Unlike an accessory after the fact, an aider and abettor must have, among other things, "performed acts or g[iven] encouragement that assisted the commission of the crime" and "intended the commission of the crime or had knowledge that the principal intended its commission at the time that [he or she] gave aid and encouragement." *People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (quotation marks, citations, and alteration omitted). See *People v Usher*, 196 Mich App 228, 232-233; 492 NW2d 786 (1992), overruled in part on other grounds by *People v Perry*, 460 Mich 55, 64-65; 594 NW2d 477 (1999) (explaining that an individual "is an accessory after the fact" as opposed to an aider an abettor "when, after obtaining knowledge of the principal's guilt after the completion of the crime, he renders assistance in an effort to hinder the detection, arrest, trial, or punishment of the principal").

Accordingly, the jury could not have convicted defendant of aiding and abetting the robbery "solely" on the basis of his conduct after the robbery—i.e., fleeing the scene and then attempting to elude the police—unless that conduct alone demonstrated, beyond a reasonable doubt, that defendant participated in the robbery knowing that his friend intended to rob the victim. It is difficult to see how the evidence of defendant's flight in this case would plausibly be enough in itself to do this, or how it would be constitutionally deficient for counsel to have not advised defendant that it could be—particularly where, as here, the evidence demonstrating defendant's requisite role and state of mind as an aider and abettor comprised more than this post-offense conduct. And the record indicates that counsel and defendant discussed, and defendant understood, his potential exposure to conviction under an aiding and abetting theory given the evidence against him; in particular, defendant stated in a January 2020 jail phone call—a call that was played for him during plea negotiations and later admitted as evidence at trial—that he had spoken to counsel the evening prior to the call and that he "did a little aiding and abetting shit." There is nothing in the record to support defendant's claim that defense counsel incorrectly or incompletely advised him regarding the legal theory of aiding and abetting or its application to the facts of this case.

Furthermore, and more generally, the record shows that defense counsel consistently requested additional time to discuss the plea offers with defendant after several status conferences, and the trial court repeatedly put counsel in a "breakout room" with defendant following status conferences so that counsel could further discuss the plea offers with defendant and, as trial approached, a defense strategy in light of the evidence against him. Defense counsel and the prosecution also reviewed several of the videos later admitted as evidence at trial with defendant during their negotiations regarding the second plea offer. And although nothing in the record indicates that counsel played the security footage for defendant during a meeting, defendant referenced his discovery packet in a jail phone call, and he admitted in his affidavit that counsel had provided his discovery packet—which summarized the contents of the video defendant complains of—to him during pretrial proceedings. Accordingly, the record belies defendant's claim that defense counsel performed deficiently during the plea-bargaining stage of his case.

Defendant also has not established prejudice—i.e., that "the outcome of the plea process would have been different with competent advice." *White*, 331 Mich App at 149 (quotation marks and citation omitted). There is no dispute that the sentences contemplated by both of the prosecution's plea offers were less severe than the sentence actually imposed following defendant's conviction. Defendant has not shown, however, a reasonable probability that he would have accepted the plea but for defense counsel's performance. See *Douglas*, 496 Mich at 592. Defendant stated in his affidavit that he would have accepted the prosecution's second plea offer had counsel explained to him that he could be convicted of aiding and abetting the robbery solely based on his conduct after the robbery and shown him "the videos of [his] conduct after the robbery[.]" As already discussed, however, the record indicates that defendant duly appreciated that he could be convicted as an aider and abettor based on the available evidence and, regardless of whether counsel showed defendant the security footage, defendant was well aware of the evidence of his flight from the scene of the robbery and his attempts to elude the police both in his car and on foot. Indeed, defendant admitted in his affidavit that counsel provided him with his "discovery packet" and "spent time with [him] during the pretrial phase . . . explain[ing] a lot of the law and the facts to [him]." This included counsel playing aloud the jail phone calls during plea negotiations, during which defendant stated that he and his friend "didn't get anything from an old man." Despite this, defendant repeatedly and unequivocally rejected the prosecution's plea offers and insisted that he proceed to trial. Beyond simply stating otherwise, defendant provides no basis to conclude that the outcome of the plea-bargaining stage of this case would have been different had counsel advised him as he claims counsel should have. See *White*, 331 Mich App at 148-149.[3]

---

[3] Defendant alternatively requests that this Court remand this case to the trial court for an evidentiary hearing, but he fails set forth—in his brief or otherwise—any additional facts that demonstrate that further development of the record is necessary to determine this issue. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). Accordingly, we decline defendant's request to remand for an evidentiary hearing. See *id*.

## III. SCORING OF OV 10

The prosecution argues that the trial court erred by rescoring OV 10 at zero points rather than 15 points,[4] and the court therefore erred by granting defendant's motion to correct his invalid sentence. We disagree.

We review sentencing issues, such as a trial court's decision to grant a motion to correct an invalid sentence, for an abuse of discretion. *People v Sabin*, 242 Mich App 656, 660; 620 NW2d 19 (2000). "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *People v Maben*, 313 Mich App 545, 552; 884 NW2d 314 (2015) (quotation marks and citation omitted). We review a trial court's factual findings under the sentencing guidelines for clear error and review de novo whether those factual findings "are adequate to satisfy the scoring conditions prescribed by statute[.]" *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021) (quotation marks and citation omitted). The trial court's factual findings "must be supported by a preponderance of the evidence," *Hardy*, 494 Mich at 438, which "means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth," *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony," and it may rely on all reasonable inferences therefrom. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021).

OV 10 is scored for the "exploitation of a vulnerable victim." MCL 777.40(1). A score of 15 points for OV 10 is warranted only if the trial court finds that "[p]redatory conduct was involved" in the sentencing offense. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "[T]o find that a defendant engaged in predatory conduct, a trial court must conclude that (1) the defendant engaged in preoffense conduct, (2) the defendant directed that conduct toward one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation, and (3) the defendant's primary purpose in engaging in the preoffense conduct was victimization." *People v Baskerville*, 333 Mich App 276, 296; 963 NW2d 620 (2020) (quotation marks and citation omitted). Predatory conduct encompasses "only those forms of preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted). A sentencing court may not assess 15 points for OV 10 "solely on the basis of the predatory conduct of a defendant's co-offenders." *People v Gloster*, 499 Mich 199, 201; 880 NW2d 776 (2016).

---

[4] The prosecution does not argue that OV 10 could or should have been scored at any amount less than 15 points.

In arguing that OV 10 should have been scored at 15 points, the prosecution relies heavily on a video showing defendant making a U-turn immediately prior to the robbery. According to the prosecution, this constituted predatory conduct because defendant "drove by, scoped out the scene, and confirmed the victim was a 'good' target" before dropping his friend off to rob the victim. While the prosecution urges a particular view of the evidence, it has not shown the trial court erred by adopting a different view and instead concluding, based on the record before it, that defendant only engaged in, at most, "purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Huston*, 489 Mich at 462 (quotation marks and citation omitted).

Testimony from the victim and defendant's friend indicated that defendant remained in the car during the robbery and had no contact with the victim before, during, or after the robbery. Additionally, defendant's friend testified that defendant was not involved in the planning of the robbery; rather, defendant's friend, without any input from defendant, made "the spur of the moment" decision to rob the victim as defendant was driving him to another location. Defendant's friend testified that he spotted the victim by himself in the street at night as defendant drove and, although he thereafter intended to rob the victim, he did not apprise defendant of that, and defendant only stopped the car when his friend told him to "stop . . . at the corner house." The video evidence relied upon by the prosecution does not contradict this version of events or betray any clear error in its adoption. And to the extent defendant's friend might have himself engaged in predatory conduct, the trial court could not assess 15 points for OV 10 "solely on the basis of the predatory conduct of . . . defendant's co-offender[]." *Gloster*, 499 Mich at 201. Accordingly, we conclude that the trial court did not err by rescoring OV 10 at zero points and therefore did not err by granting defendant's motion to correct his invalid sentence. See *Hardy*, 494 Mich at 438; *Lydic*, 335 Mich App at 490.

Affirmed.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney